No. 24-5629

*In the*

# UNITED STATES COURT OF APPEALS

*for the*

# NINTH CIRCUIT

GULLIVER'S TAVERN, INCORPORATED D/B/A FOXY LADY,

*Plaintiff-Appellant,*

v.

FOXY LADY INC. D/B/A FOXY LADY COFFEE,

*Defendant-Appellee.*

On Appeal from the
United States District Court for the Western District of Washington
No. 3:23-cv-05027-TMC
Honorable Tiffany M. Cartwright, United States District Judge

# APPELLANT'S OPENING BRIEF

Marc J. Randazza
Ronald D. Green
Jay M. Wolman
RANDAZZA LEGAL GROUP, PLLC
4974 S. Rainbow Blvd., Ste 100
Las Vegas, Nevada 89118
Tel: 702-420-2001
ecf@randazza.com

Alex J. Shepard
RANDAZZA LEGAL GROUP, PLLC
720 Seneca St., Ste. 107
Seattle, WA 98101
Tel: 564-236-2220
ecf@randazza.com

Attorneys for Appellant

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Appellant Gulliver's Tavern, Incorporated d/b/a Foxy Lady hereby provides the following information: There are no parent corporations or publicly held corporations that own 10% or more of the stock of Appellant Gulliver's Tavern, Incorporated.

Date: October 25, 2024.          RANDAZZA LEGAL GROUP, PLLC

/s/ Marc J. Randazza
Marc J. Randazza
Ronald D. Green
Jay M. Wolman
Randazza Legal Group, PLLC
4974 S. Rainbow Blvd., Ste 100
Las Vegas, Nevada 89118
Tel:  702-420-2001
ecf@randazza.com

Alex J. Shepard
Randazza Legal Group, PLLC
720 Seneca St., Ste. 107
Seattle, WA 98101
Tel:  564-236-2220
ecf@randazza.com

*Attorneys for Appellant*

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION ................................................... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ............................... 2

STATEMENT OF THE CASE ........................................................ 5

I. APPELLANT GULLIVER'S TAVERN, INC. D/B/A FOXY LADY ........................... 5

II. APPELLEE FOXY LADY, INC. D/B/A FOXY LADY COFFEE ............................. 7

III. RELEVANT PROCEDURAL HISTORY AND DISPOSITION BELOW ................... 9

IV. CITATION OF THE DECISIONS OR SUPPORTING OPINION .......................... 10

SUMMARY OF THE ARGUMENT ................................................. 11

STANDARD OF REVIEW ........................................................ 14

ARGUMENT ..................................................................... 15

I. APPELLANT HAS A NATIONWIDE PRESUMPTION OF PRIORITY AND OTHER
LEGAL PRESUMPTIONS ......................................................... 15

II. THE DISTRICT COURT FAILED TO HEED THE STANDARD FOR ISSUANCE OF
JUDGMENT BY DEFAULT ....................................................... 17

III. APPELLANT'S MERITORIOUS CLAIMS WERE WELL-PLED ......................... 19

A. Appellant has Protectable Interest in the Mark ............................... 20

B. Appellee's Uses Cause a Likelihood of Confusion ............................. 22

i. Geographic Distance does Not Favor FLC ............................. 24

ii. Appellant's Mark is Strong ...................................... 27

iii.    The Goods and Services of FLC are Proximate to Those of
Appellant .................................................................. 32

iv. FLC's Mark is Similar to Appellant's ................................. 35

v.      Evidence of Actual Confusion is Unnecessary .................. 40

vi.     The Parties Use Convergent Marketing Channels .......... 41

vii.    Average Consumers Exercise a Low Degree of Care for these Goods and Services ........................................... 43

viii. FLC Should be Presumed to have Intended to Select an Infringing Mark ........................................................... 44

ix.     Appellant is Likely to Expand ........................................... 46

C. The remaining Eitel factors weigh strongly in favor of default judgment . 47

i. Appellant is Prejudiced in the Absence of Default Judgment 47

ii.     The Sum of Money at Stake Favors Appellant ................. 48

iii.    There are No Disputed Material Facts ............................ 49

iv.     FLC Lack's Excusable Neglect .......................................... 50

v.      The Merits Should be Resolved in Appellant's Favor ...... 51

CONCLUSION ....................................................................... 52

# TABLE OF AUTHORITIES

## CASES

*Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446 (9th Cir. 1991) .................................. 41

*Aldabe v. Aldabe*,
616 F.2d 1089 (9th Cir. 1980) ........................................................ 4, 14

*Americana Trading Inc. v. Russ Berrie & Co.*,
966 F.2d 1284 (9th Cir. 1992) ............................................................. 16

*AMF, Inc. v. Sleekcraft Boats*,
599 F.2d 341 (9th Cir. 1979) ........................ 3, 23, 24, 30, 41, 42, 45, 46

*Applied Info. Scis. Corp. v. Ebay, Inc.*,
511 F.3d 966 (9th Cir. 2007) .............................................................. 16

*AutoZone, Inc. v. Tandy Corp.*,
373 F.3d 786 (6th Cir. 2004) ............................................................. 29

*BBC Group NV LLC v. Island Life Restaurant Group LLC*,
413 F.Supp.3d 1032 (W.D. Wash. 2019)......................................... 33, 34

*Brennan's, Inc. v. Brennan's Rest, L.L.C.*,
360 F.3d 125 (2d Cir. 2004) ............................................................. 30

*Brookfield Communs., Inc. v. W. Coast Entm't Corp.*,
174 F.3d 1036 (9th Cir. 1999)......... 2, 3, 4, 14, 19, 25, 26, 29, 32, 33, 35

*Choice Hotels Int'l, Inc. v. Kumar & Birla, LLC*,
No. CV-11-5100-LRS,
2013 U.S. Dist. LEXIS 192618 (E.D. Wash. Jan. 14, 2013)............... 49

*Civic Ctr. Square v. Ford*,
12 F.3d 875 (9th Cir. 1993) ............................................................... 50

*Coach Servs., Inc. v. Cielo Creations, Inc.*,
No. CV 10-4108 GAF (EX),
2011 U.S. Dist. LEXIS 165185 (C.D. Cal. Aug. 16, 2011) ................... 45

*Color Me House, Inc. v. Discovery Communs., Inc.*,
No. C12-5935 RJB,
2013 U.S. Dist. LEXIS 44234 (W.D. Wash. Mar. 27, 2013) ................ 45

*Curtis v. Illumination Arts, Inc.*,
33 F.Supp.3d 1200 (W.D. Wash. 2014) .................................................. 18

*Dawn Donut Co. v. Hart's Food Stores, Inc.*,
267 F.2d 358 (2d Cir. 1959) .................................................................. 24

*Dep't of Parks and Recreation for Cal. v. Bazaar Del Mundo, Inc.*,
448 F.3d 1118 (9th Cir. 2006) .............................................................. 19

*Discovery Communs., Inc. v. Animal Planet, Inc.*,
172 F. Supp. 2d 1282 (C.D. Cal. Sep. 17, 2001 ................................... 45

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*,
109 F.3d 1394 (9th Cir. 1997) .............................................................. 20

*eAcceleration Corp. v. Trend Micro, Inc.*,
408 F.Supp.2d 1110 (W.D. Wash. 2006) ............................................... 20

*Eitel v. McCool*,
782 F.2d 1470 (9th Cir. 1986) ................................. 4, 14, 17, 18, 47, 49

*Electropix Inc. v. Liberty Livewire Corp.*,
178 F.Supp.2d 1125 (C.D. Cal. 2001) ...................................... 36, 39, 40

*Elektra Entm't Grp., Inc. v. Crawford*,
226 F.R.D. 388 (C.D. Cal. 2005) .......................................................... 50

*Emergency One, Inc. v. Am. Fire Eagle Engine Co.*,
332 F.3d 264 (4th Cir. 2003) ......................................................... 17, 25

*Fairway Foods v. Fairway Mkts.*,
227 F.2d 193 (9th Cir. 1955) ........................................................... 26, 27

*Filipino Yellow Pages, Inc. v. Asian Journal Publ'cns,*
198 F.3d 1143 (9th Cir. 1999) ................................................................ 28

*G&G Closed Circuit Events, LLC v. La Placita RM Rest., Inc.,*
No. 2:22-cv-1089 DB,
2023 U.S. Dist. LEXIS 137940 (E.D. Cal. Aug. 7, 2023) .............. 48, 50

*GoTo.com, Inc. v. Walt Disney Co.,*
202 F.3d 1199 (9th Cir. 2000) ................................................................ 35

*Hall v. City of L.A.,*
697 F.3d 1059 (9th Cir. 2012) ................................................................. 1

*Ingenco Holdings, LLC v. Ace Am. Ins. Co.,*
921 F.3d 803 (9th Cir. 2019) ................................................................. 14

*Ironhawk Techs., Inc. v. Dropbox, Inc.,*
2 F.4th 1150 (9th Cir. 2021) ................................................................. 32

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.,*
408 F.3d 596 (9th Cir. 2005) ................................................................. 28

*Lawn Managers, Inc. v. Progressive Lawn Managers, Inc.,*
959 F.3d 903 (8th Cir. 2020) ................................................................. 46

*Levi Strauss & Co. v. Blue Bell, Inc.,*
778 F.2d 1352 (9th Cir. 1985) ............................................................... 19

*Luigino's, Inc. v. Stouffer Corp.,*
170 F.3d 827 (8th Cir. 1999) ........................................................... 38, 39

*McGregor-Doniger Inc. v. Drizzle, Inc.,*
599 F.2d 1126 (2d Cir. 1979) ............................................................... 44

*Meadows v. Dominican Republic,*
817 F.2d 517 (9th Cir. 1987) ................................................................. 50

*Monster, Inc. v. Dolby Labs Licensing Corp.,*
920 F. Supp. 2d 1066 (N.D. Cal. 2013) ................................................. 44

vi

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
  638 F.3d 1137 (9th Cir. 2011) ............................................ 23, 41, 43, 44

*New Flyer Indus. Can. ULC v. Rugby Aviation, LLC*,
  405 F.Supp.3d 886 (W.D. Wash. 2019) ................................................. 20

*NewGen, LLC v. Safe Cig, LLC*,
  840 F.3d 606 (9th Cir. 2016) .......................................................... 18, 48

*Nike, Inc. v. Fuijan Jialaimeng Shoes Co.*,
  No. 2:17-cv-00516-GMN-GWF,
  2019 U.S. Dist. LEXIS 55583 (D. Nev. Mar. 6, 2019) ........................ 51

*Nutri/System, Inc. v. Con-Stan Indus., Inc.*,
  809 F.2d 601 (9th Cir. 1987 ............................................................... 42

*O'Connor v. 206-LLC*,
  2:23-cv-00954-RSM,
  2023 U.S. Dist. LEXIS 210482 (W.D. Wash. Nov. 27, 2023). ............ 48

*Official Airline Guides, Inc. v. Goss*,
  6 F.3d 1385 (9th Cir. 1993) .......................................................... 27, 28

*OTR Wheel Eng'g, Inc. v. West Worldwide Servs.*,
  897 F.3d 1008 (9th Cir. 2018) ............................................................ 25

*Peninsula Cmty. Health Servs. v. Olympic Peninsula Health Servs. PS*,
  3:20-cv-05999-BHS (W.D. Wash. Mar. 17, 2023) .......................... 37, 38

*Pepsico, Inc. v. Cal. Sec. Cans*,
  238 F.Supp.2d 1172 (C.D. Cal. 2002) ................................................ 48

*Pinocchio's Pizza Inc. v. Sandra Inc.*,
  11 U.S.P.Q.2d 1227, 1228 (T.T.A.B.1989) .......................................... 26

*Pizzeria Uno Corp. v. Temple*,
  747 F.2d 1522 (4th Cir. 1984). ........................................................... 25

*Pollution Denim & Co. v. Pollution Clothing Co.*,
  547 F.Supp.2d 1132 (C.D. Cal. 2007) ................................................ 17

vii

*Pom Wonderful, LLC v. Hubbard,*
   775 F.3d 1118 (9th Cir. 2014) ................................................... 23, 42, 46

*Publications, Intl, Ltd. v. Landoll, Inc.,*
   164 F.3d 337 (7th Cir. 1998) ................................................................. 17

*Reardon LLC v. Reardon Com., Inc.,*
   683 F.3d 1190 (9th Cir. 2012) ......................................................... 22, 32

*Relman Colfax PLLC v. Fair Hous. Council,*
   No. 21-55458,
   2022 U.S. App. LEXIS 13895 (9th Cir. May 23, 2022), ....................... 14

*Romag Fasterners, Inc. v. Fossil, Inc.,*
   140 S.Ct. 1492 (2020) ........................................................................... 21

*SafeWorks, Ltd. Liab. Co. v. Teupen Am., LLC,*
   717 F.Supp.2d 1181 (W.D. Wash. 2010) ............................................... 20

*San Diego Comic Convention v. Dan Farr Prods.,*
   336 F. Supp. 3d 1172 (S.D. Cal. 2018) ................................................. 29

*Sarieddine v. Vaptio, Inc.,*
   No. 2:20-cv-07785-VAP-MRWx,
   2021 U.S. Dist. LEXIS 198590 (C.D. Cal. June 15, 2021) ................. 45

*Seattle Endeavors v. Mastro,*
   123 Wn.2d 339, 868 P.2d 120 (Wash. 1994) ........................................ 20

*See Las Vegas Sands Corp. v. Unknown Registrants,*
   No. 2:15-cv-02341-APG-NJK,
   2016 U.S. Dist. LEXIS 60117 (D. Nev. May 3, 2016) ......................... 50

*Stone Creek, Inc. v. Omnia Design, Inc.,*
   875 F.3d 426 (9th Cir. 2017) ......................................................... 21, 24

*Stork Restaurant, Inc. v. Sahati,*
   166 F.2d 348 (9th. Cir. 1948) ............................................................... 27

*Surfvivor Media, Inc. v. Survivor Productions,*
   406 F.3d 625 (9th Cir. 2005) ................................................................ 28

*TeleVideo Sys., Inc. v. Heidenthal,*
   826 F.2d 915 (9th Cir. 1987) ................................................................ 18

*The New Kids on the Block v. News Am. Pub'g.,*
   971 F.2d 302 (9th Cir. 1992) ................................................................ 16

*Trader Joe's v. Hallatt,*
   835 F.3d 960 (9th Cir. 2016) ................................................................ 46

*Two Pesos, Inc. v. Taco Cabana, Inc.,*
   505 U.S. 764 (1992) ............................................................................. 28

*UN4 Prods., Inc. v. Primzoich,*
   372 F.Supp.3d 1128 (W.D. Wash. 2019) ............................................. 48

*Vogel v. Rite Aid Corp.,*
   992 F.Supp.2d 998 (C.D. Cal. 2014) ................................................... 48

*Vuitton Et Fils S.A. v. J. Young Enters.,*
   644 F.2d 769 (9th Cir. 1981) ................................................................ 24

*Wynn Oil Co. v. American Way Serv. Corp.,*
   943 F.2d 595 (6th Cir. 1991) ................................................................ 29

*Zazu Designs v. L'Oreal, S.A.,*
   979 F.2d 499 (7th Cir. 1992) ................................................................ 46

*Zobmondo Ent., LLC v. Falls Media, LLC,*
   602 F.3d 1108 (9th Cir. 2010) ............................................................. 20

**STATUTES**

15 U.S.C. § 1051 ........................................................................ 11, 19, 21

15 U.S.C. § 1057 ........................................................................ 16, 21, 24

15 U.S.C. § 1072 ................................................................................. 44

15 U.S.C. § 1115 ................................................................ 16, 29

28 U.S.C. § 1291 ...................................................................... 1

28 U.S.C. § 1331 ...................................................................... 1

28 U.S.C. § 1338 ...................................................................... 1

Wash. Rev. Code § 19.86.090 .................................................. 11

## RULES

Fed. R. App. P. 26.1 ................................................................. i

Fed. R. App. P. 4 ..................................................................... 1

Fed. R. App. P. 55 .................................................................. 14

Fed. R. Civ. P. 8 ..................................................................... 41

## OTHER AUTHORITIES

2 J. Thomas McCarthy, *McCarthy on Trademarks*
 § 23:50 (4th ed. 2000) ......................................................... 36

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1338(a) because Appellant Gulliver's Tavern, Inc. d/b/a Foxy Lady ("Foxy Lady") brought claims arising under federal law, specifically the Lanham Act. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1291. On August 29, 2024, the District Court entered a Judgment in a Civil Case (1-ER-2),[1] an appealable final decision. Appellant timely filed a Notice of Appeal (3-ER-446-447) on September 13, 2024. *See* Fed. R. App. P. 4(a)(1). Appellant's Notice of Appeal brought up all interlocutory orders for review, including the order dated December 4, 2023 (1-ER-23-39) and the order dated August 29, 2024 (1-ER-3-22). *See Hall v. City of L.A.*, 697 F.3d 1059, 1070-71 (9th Cir. 2012).

---

[1] References to Appellant's Excerpts of Record are made throughout this brief using the designation "ER".

1

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Whether the District Court erred by disregarding Foxy Lady's presumption of exclusive nationwide trademark use, even though Foxy Lady possesses an incontestable trademark registration with the United States Patent and Trademark Office ("USPTO") for FOXY LADY for many of the goods and services that Appellee Foxy Lady Coffee, Inc. ("FLC"), who defaulted three times, offered under its infringing marks. Foxy Lady established its incontestable trademark rights in Dkt. 1, Dkt. 13, Dkt. 21, Dkt. 27, and Dkt. 38. The issues were ruled on in Dkt. 20 and Dkt. 42. The standard of review is *de novo. Brookfield Communs., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999).

2.      Whether the District Court erred when it held that Foxy Lady's FOXY LADY mark and FLC's FOXY LADY CAFÉ and FOXY LADY LATTE marks were not sufficiently similar due to minor cosmetic differences in their logos, even though they are legally identical, confusingly similar, and contain the same dominant terms. These issues were first raised in Dkt. 13 and Dkt. 38. The issues were ruled on in Dkt. 20 and Dkt. 42. The standard of review is *de novo. Brookfield*, 174 F.3d at 1046.

3.     Whether the District Court erred in its finding that the "proximity of the goods" factor in the likelihood of confusion test weighed in favor of FLC based almost solely on the geographic distance between the parties, even though they offered the same restaurant, bar, and adult entertainment services to patrons under legally identical marks. These issues were first raised in Dkt. 13 and Dkt. 38. The issues were ruled on in Dkt. 20 and Dkt. 42. The standard of review is *de novo*. *Brookfield*, 174 F.3d at 1046.

4.     Whether the lower court erred when holding that Foxy Lady's FOXY LADY mark was "presumptively weak," even though it has been in use for over 45 years, it is incontestable with the United States Patent and Trademark Office, and it does not suggest the goods and services that Appellant Foxy Lady offers under it. These issues were first raised in Dkt. 13 and Dkt. 38. The issues were ruled on in Dkt. 20 and Dkt. 42. The standard of review is *de novo*. *Brookfield*, 174 F.3d at 1046.

5.     Whether the lower court erred in its application of the remaining likelihood of confusion factors or its failure to consider the remaining likelihood of confusion factors enumerated in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). These issues were

raised in Dkt. 13 and Dkt. 38. The issues were ruled on in Dkt. 20 and Dkt. 42. The standard of review is *de novo*. *Brookfield*, 174 F.3d at 1046.

6.     Whether the district court erred in denying Appellant's motions for default judgment based upon its conclusions that Foxy Lady had not asserted meritorious claims and filed an insufficient complaint pursuant to the default judgment factors enumerated in *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). These issues were first raised in Dkt. 13 and Dkt. 38. The issues were ruled on in Dkt. 20 and Dkt. 42. The standard of review is abuse of discretion. *See Eitel*, 782 F.2d at 1471, *citing Aldabe v. Aldabe*, 616 F.2d 1089, 1092-93 (9th Cir. 1980).

4

## STATEMENT OF THE CASE

### I.   Appellant Gulliver's Tavern, Inc. d/b/a Foxy Lady

Foxy Lady owns and operates the Foxy Lady adult nightclub in Providence, Rhode Island. (2-ER-98-99, ¶¶ 2, 4, 6.) It possesses nationwide registrations for its FOXY LADY trademark and, pursuant to the Lanham Act, has exclusive use and licensing rights to its marks throughout the entire United States. (2-ER-99, ¶¶ 7-9; 2-ER-102.) The club has been in continuous operation, and its FOXY LADY mark has been in continuous use, since 1979. (2-ER-99, ¶¶ 6-11; 2-ER-102.) Foxy Lady has licensed the FOXY LADY mark in the United States and intends to do so again. (2-ER-99, ¶ 11.) In fact, it would license the mark to Appellee FLC if FLC met its licensing standards and agreed to pay the fee to license FOXY LADY.

Foxy Lady applied for a trademark registration for FOXY LADY with the USPTO on August 22, 2002. (2-ER-102-103.) On February 3, 2004, it obtained a federal trademark registration for FOXY LADY (U.S. Reg. No. 2,809,938) for entertainment in the nature of live performances for an adult audience, namely exotic dance performances and restaurant and bar services. (2-ER-102-103.) That registration has not been

5

abandoned, cancelled, or revoked and has become incontestable through the filing of Section 8 and 15 declarations with the USPTO. (2-ER-104-111.)

Based upon its registrations and extensive use, Foxy Lady owns the presumptive exclusive right to use the FOXY LADY mark in connection with exotic dance performances, bar services, and restaurant services in the entirety of the United States. (2-ER-174, ¶ 9.) Foxy Lady additionally owns valid and subsisting common law rights to the FOXY LADY mark through its continuous use. (2-ER-175, ¶ 13.)

Foxy Lady's extensive use and promotion has made its adult nightclub famous and world-renowned. It garners worldwide media attention. The New York Post called the adult nightclub "iconic" and "New England's oldest and most well-known strip club." (2-ER-175-176, ¶ 15; 2-ER-196-203.) The Associated Press has described it similarly. (2-ER-175-176, ¶ 15; 2-ER-204-207.) As one of the few adult cabarets that garners national and international attention, its marks have become an attractive target for infringers such as Appellee. (2-ER-176, ¶ 16.)

## II.    Appellee Foxy Lady, Inc. d/b/a Foxy Lady Coffee

Appellee FLC operates what it describes as a "unique coffee house and espresso drive thru concept that was establish [sic] in 2008." (2-ER-176, ¶ 17; 2-ER-212-217.) Appellant disagrees with FLC's description of itself as "unique." In addition to coffee, it offers bar and restaurant services, just like Appellant Foxy Lady. (2-ER-176, ¶¶ 18-22.) It uses the entirety of Appellant's FOXY LADY mark to offer those services. (2-ER-176, ¶ 22.) Most egregiously, its servers render those restaurant and bar services while dressed in provocative lingerie, just as the servers and dancers at Foxy Lady's adult cabaret dress. (2-ER-176, ¶¶ 19-21)

FLC operates three separate businesses using the infringing "Foxy Lady" name:

(a)    Foxy Lady Latte has three locations and is, upon information and belief, a coffee shop with baristas that dress in provocative lingerie (2-ER-176, ¶ 19);

(b)    Foxy Lady Bikini Bar is located in Tacoma, Washington and advertises that it has a "Full Service Bar: Ice Cold Beer on draft, Wine, & Spirits!" It serves breakfast, lunch, and dinner

and requires its servers to dress in provocative lingerie (2-ER-176, ¶ 20); and

(c)     Foxy Lady Café has not yet opened and will be located in Centralia, Washington. Upon information and belief, it will be a full-service restaurant that may serve alcohol with servers that dress in provocative lingerie (2-ER-176, ¶ 21).

FLC started this use about 38 years after Foxy Lady commenced using its mark and about thirteen years after Foxy Lady obtained a USPTO registration for its mark. (2-ER-177, ¶¶ 23-25.) Importantly, these infringing uses began after Foxy Lady's mark became incontestable. (2-ER-104-111.)

FLC has used derivations of the FOXY LADY mark for services that are identical to Appellant's services, or clearly within the Appellant's natural zone of expansion. (2-ER-177, ¶ 26.)

FLC additionally mimics Appellant Foxy Lady's promotion of its FOXY LADY mark. For instance, Appellee FLC's Instagram page almost exclusively features images of women in various states of undress, including fully topless. (2-ER-178, ¶ 30; 2-ER-218-220.) This creates confusion with Foxy Lady. FLC is likely to create confusion in the form

of an association between Appellant Foxy Lady and the bikini bar, café, and coffee shops operated by Appellee. (2-ER-178, ¶ 31.)

### III.    Relevant Procedural History and Disposition Below

Foxy Lady filed its initial complaint in the U.S. District Court for the Western District of Washington on January 9, 2023. (3-ER-420-440.) Appellee FLC was served but chose not to respond to the Complaint, causing the lower court to enter default on February 14, 2023. (3-ER-414.) Appellant Foxy Lady moved for default judgment on July 18, 2023. (3-ER-390-410.) On December 4, 2023, the lower court denied the motion for default judgment and provided Appellant with leave to amend. (1-ER-23-39.)

Appellant filed a First Amended Complaint (2-ER-250-264) on December 26, 2023. Again, Appellant served Appellee, and Appellee again chose not to respond. Rather than request default, Appellant asked the court for leave to amend again. This was granted. (2-ER-221-222.)

Appellant Foxy Lady filed its Second Amended Complaint on April 2, 2024. (2-ER-172-189.) Once again, Appellant served Appellee, and Appellee *again* opted to ignore it. Appellee FLC was served with process on three separate occasions and disregarded this lawsuit. Its refusal to

participate in this case was clearly an informed choice and not the result of any mistake or miscommunication.

The lower court granted default against FLC for the second time on May 10, 2024. (2-ER-166.) On or about July 2, 2024, Foxy Lady filed its Renewed Motion for Default Judgment and Permanent Injunction. (2-ER-134-153.) On August 29, 2024, the lower court denied that Motion, incorrectly holding that Appellant could not show that consumers would be confused by Appellee's concurrent and infringing use of Appellant's marks. Then, the court dismissed the case without prejudice and issued its Judgment. (1-ER-3-22, 1-ER-2.)

## IV. Citation of the Decisions or Supporting Opinion

The lower court's orders may be cited as follows:

- *Gulliver's Tavern, Inc. d/b/a Foxy Lady*, No. 3:23-cv-05027-TMC (W.D. Wash. Dec. 4, 2023); and

- *Gulliver's Tavern, Inc. d/b/a Foxy Lady*, No. 3:23-cv-05027-TMC (W.D. Wash. Aug. 29, 2024).

## SUMMARY OF THE ARGUMENT

Appellant Foxy Lady filed suit against Appellee FLC, asserting claims for trademark infringement under the Lanham Act and the common law, unfair competition under the Lanham Act, and unfair competition or unfair and deceptive trade practices under the Washington Consumer Protection Act. Foxy Lady moved for default judgment twice. On each occasion, the lower court only considered two of the default judgment factors – the merit of the claims and the sufficiency of its complaint.

While the District Court correctly held that Foxy Lady had a protectable interest in its FOXY LADY mark, it incorrectly found that there was no likelihood of confusion between Appellant's use of FOXY LADY and Appellee's infringing use of FOXY LADY CAFÉ and FOXY LADY LATTE for the same or extremely similar services.

The trial court primarily based its denials on its erroneous findings that Appellant's and Appellee's businesses are geographically remote, that Appellant's FOXY LADY mark was a weak mark, and that the marks were not sufficiently similar. The lower court reached these conclusions by disregarding primary tenets of trademark law.

11

First, the owner of a registered mark has a presumption of nationwide exclusive use of its mark for its registered goods and services. It is up to the defendant to rebut that presumption. In this case, FLC did not show up and thus provided no rebuttal. While the court inexplicably decided to step into FLC's shoes as robed defense counsel, it botched the analysis and excused FLC from meeting its burden of proof.

Further, the marks at issue are Appellant's FOXY LADY mark and Appellee's use of Foxy Lady Café and Foxy Lady Latte in connection with nude or semi-nude entertainment. They are not just similar but legally identical, as the addition of generic words such as "latte" and "café" are irrelevant. Moreover, the logos used by each are substantially the same and would be confusing to the average consumer.

Finally, when the lower court held that Appellant's mark was a weak, suggestive mark, it erred. The mark is arbitrary, as it does not suggest the bar, restaurant, and adult entertainment services that Foxy Lady offers under the mark. Further, even if it was suggestive, Foxy Lady has been using it long enough that it has been legally converted to a strong mark, entitled to the strongest possible protection.

While these were the primary reasons for the lower court's decision, the remaining likelihood of confusion factors also favor Appellant Foxy Lady. The goods offered under both marks are nearly identical as both Appellant and Appellee offer bar, restaurant, and adult entertainment services. They use the same marketing channels and attract the same class of consumer. The degree of care that a consumer will exercise prior to purchasing goods and services from Appellant and Appellee is low. Given that Appellee did not show up to defend itself, the Court can infer that it intended to create a likelihood of confusion. Further, while not strictly necessary to the likelihood of confusion analysis, FLC's services are squarely within Appellant's services or their natural zone of expansion, and Appellant was prevented from gathering evidence of actual confusion by Appellee's failure to participate in this case.

## STANDARD OF REVIEW

Appellant Foxy Lady appeals the lower court's denial of two motions for default judgment. The U.S. Court of Appeals for the Ninth Circuit reviews a district court's denial of a motion for default judgment pursuant to Fed. R. App. P. 55(b) for an abuse of discretion. *See Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986), *citing Aldabe v. Aldabe*, 616 F.2d 1089, 1092-93 (9th Cir. 1980).

An error of law amounts to an abuse of discretion. *See Relman Colfax PLLC v. Fair Hous. Council*, No. 21-55458, 2022 U.S. App. LEXIS 13895, at *2 (9th Cir. May 23, 2022), *citing Ingenco Holdings, LLC v. Ace Am. Ins. Co.*, 921 F.3d 803, 808 (9th Cir. 2019). If the district court based its ruling "on an erroneous view of the law," this Court should "review the underlying legal issues … *de novo*." *Brookfield Communs., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999). Here, the lower court abused its discretion by failing to correctly apply trademark law and the rules of civil procedure. Thus, this Court should review the legal issues in this appeal *de novo*.

14

# ARGUMENT

Appellant Foxy Lady owns an incontestable trademark registration with the USPTO for FOXY LADY for, among other things, restaurant and bar services and exotic dance performances. FLC unlawfully uses its FOXY LADY mark for restaurant and bar services and using baristas and servers that dress in skimpy, revealing clothing that an exotic dancer would normally wear. Appellee was served with three Complaints for trademark infringement and failed to answer or defend against any of them. Even though the marks used by Appellant and Appellee are legally identical and used for the same purpose, the lower court held twice, in response to two separate motions for default judgment, that Appellant was not entitled to default judgment because there was no likelihood of confusion based upon the negligibly different services offered by the parties and because they were geographically distant and not in direct competition with each other. The trial court's analysis is antithetical to decades of established trademark law and must be overturned.

## I. Appellant has a Nationwide Presumption of Priority and Other Legal Presumptions

Appellant Foxy Lady's registered trademark has a nationwide presumption of priority, ownership, validity, protectability,

15

distinctiveness, and secondary meaning. A trademark is a "limited property right in a particular word, phrase, or symbol." *The New Kids on the Block v. News Am. Pub'g.*, 971 F.2d 302, 306 (9th Cir. 1992). Its primary purposes are "to identify the manufacturer or sponsor of a good or service" and to prevent an infringer from using the trademark to "capitalize on the time, money, and resources of his competitor." *Id.*

The possession of a registered trademark on the principal register is *prima facie* evidence of the registrant's ownership of the mark. 15 U.S.C. § 1057(b). The owner of a mark registered with the USPTO is entitled to a presumption that the mark is valid and protectible. *See* 15 U.S.C. § 1057(b); *Applied Info. Scis. Corp. v. Ebay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007). It also provides a presumption that the registered mark has acquired distinctiveness and secondary meaning. *See Americana Trading Inc. v. Russ Berrie & Co.*, 966 F.2d 1284, 1287 (9th Cir. 1992).

Most importantly, it provides a **nationwide presumption of priority**. *See* 15 U.S.C. §§ 1115(a) & 1057(c). In other words, it is *prima facie* evidence that the registrant has the "exclusive right to use the registered mark in commerce or in connection with the goods and services specified in the registration." 15 U.S.C. § 1115(a). The "presumption of

16

priority enjoyed by the registrant of a mark is 'nationwide in effect.'" *Pollution Denim & Co. v. Pollution Clothing Co.*, 547 F.Supp.2d 1132, 1140 (C.D. Cal. 2007), *quoting Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 267 (4th Cir. 2003). An infringer has the burden of rebutting these presumptions. *See Publications, Intl, Ltd. v. Landoll, Inc.*, 164 F.3d 337, 340 (7th Cir. 1998) (defendant "has the laboring oar on all issues related to validity").

## II. The District Court Failed to Heed the Standard for Issuance of Judgment by Default

All of the factors support default judgment in favor of Foxy Lady, and the District Court erred in their application. Appellant Foxy Lady filed two motions for default judgment. In both instances, the trial court used the factors enumerated in *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). (*See* 1-ER-26-27; 1-ER-6-7.) Those factors are:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on their merits.

*Id.* at 1471-72; *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616-17 (9th Cir. 2016). When deciding a motion for default judgment, the complaint's factual allegations regarding liability are deemed admitted by the non-moving party and are accepted as true. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

With regard to both motions, the lower court limited its discussion to the second and third *Eitel* factors and incorrectly determined that Foxy Lady's complaints were not "legally sufficient." (1-ER-29; 1-ER-7-8.) It ignored the other factors. Given that the lower court's error arose solely from faulty analysis on the second and third factors, Appellant focuses on those two factors which, as here, are often considered together. *See Curtis v. Illumination Arts, Inc.*, 33 F.Supp.3d 1200, 1211 (W.D. Wash. 2014). However, the remaining *Eitel* factors are decidedly in its favor.

Both the merits of the claims and the sufficiency of the complaint factors simply "require that a plaintiff state a claim upon which [it] may recover." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *Padded Spaces LLC v. Weiss*, No. C21-0751JLR, 2022 U.S. Dist. LEXIS 130519, at *3 (W.D. Wash. July 22, 2022), *quoting PepsiCo., Inc. v. Cal Sec. Cans*, 238 F.Supp.2d 1172, 1175 (C.D. Cal. 2002). In both of its orders on default

judgment, the trial court based its decision on an erroneous view of the law. Thus, this Court conducts its review of the legal issues *de novo*. *Brookfield*, 174 F.3d at 1046. And, on *de novo* review, default judgment in Appellant's favor is warranted.

### III. Appellant' Meritorious Claims were Well-Pled

All of the claims asserted in the operative complaint were well-pled. Specifically, the claims at issue are trademark infringement under the Lanham Act, unfair competition under the Lanham Act, common law trademark infringement, and unfair competition and unfair or deceptive trade practices pursuant to the Washington Consumer Protection Act. Default judgment should have been granted as to each.

A plaintiff alleging trademark infringement under the Lanham Act must show that (1) the rights owner has a protectable ownership interest in the mark; and (2) the defendant's use of the mark is likely to cause consumer confusion. (*See* 1-ER-29; 1-ER-8, *both citing Dep't of Parks and Recreation for Cal. v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006); *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985) (en banc)). This "likelihood of confusion" test is also used for claims regarding common law trademark infringement. *See New Flyer*

*Indus. Can. ULC v. Rugby Aviation, LLC*, 405 F.Supp.3d 886, 896 (W.D. Wash. 2019), *citing Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1403 (9th Cir. 1997).

Likewise, the elements "necessary to establish trademark infringement and unfair competition claims are identical." *eAcceleration Corp. v. Trend Micro, Inc.*, 408 F.Supp.2d 1110, 1114 (W.D. Wash. 2006), *citing Brookfield*, 174 F.3d at 1046 n.6, 1047 n.8. Moreover, Washington Consumer Protection Act claims are substantially congruous to Lanham Act claims. *See SafeWorks, Ltd. Liab. Co. v. Teupen Am., LLC*, 717 F.Supp.2d 1181, 1192 (W.D. Wash. 2010); *Seattle Endeavors v. Mastro*, 123 Wn.2d 339, 350, 868 P.2d 120 (Wash. 1994). All of Appellant's claims for relief are decided on substantially the same standard.

## A. Appellant has Protectable Interest in the Mark

The lower court correctly held that Appellant demonstrated a protectable ownership interest in the FOXY LADY mark. After all, Appellant Foxy Lady owns an incontestable federal trademark registration. (*See* 1-ER-20, *citing Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010)). When a trademark is registered with the USPTO, the first party to file has priority over all

future users of the mark. *See* 15 U.S.C. § 1057(c). That priority extends to the entire United States. *See id.* The owner of a registered trademark enjoys the unlimited right to use the mark nationwide, and federal registration affords the registrant priority over all future users of confusingly similar marks. 15 U.S.C. § 1057(c). However, users of the trademark that acquired common law rights before the registration issued maintain their limited rights in the geographic areas where they established their rights. *See Stone Creek, Inc. v. Omnia Design, Inc.*, 875 F.3d 426, 436 (9th Cir. 2017) (holding that "the geographic scope of a senior user's rights in a registered trademark look like Swiss cheese: it stretches throughout the United States with holes cut out where others acquired common law rights prior to the registration"), *abrogated on other grounds by Romag Fasterners, Inc. v. Fossil, Inc.*, 140 S.Ct. 1492, 1497 (2020).

These principles of geographic exceptions to registered rights are theoretical here, however, as the record is bereft of anything establishing such exceptions to Foxy Lady's rights. Pursuant to the Lanham Act, as of August 22, 2002, Appellant had the exclusive *nationwide* right to use FOXY LADY for restaurant and bar services— including in geographic

21

areas where it may or may not directly offer its services. At that time, Appellee FLC did not have common law rights anywhere in the United States. After all, by its own admission, it did not exist until at least 2008. The District Court erred in disregarding Appellant's nationwide rights.

### B.    Appellee's Uses Cause a Likelihood of Confusion

There is a likelihood of confusion between Foxy Lady's FOXY LADY trademark and the infringing FOXY LADY CAFÉ and FOXY LADY LATTE marks used by Appellee. FLC uses the entirety of Appellant's mark in its branding—it is Appellant's mark plus an extra word. This renders them legally identical. *See, infra*, Section III(B)(d). As the infringing marks used by Appellee are legally identical to Appellant's incontestable mark, "a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services bearing one of the marks or names at issue in the case." *Reardon LLC v. Reardon Com., Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012).

Courts in the Ninth Circuit consider eight factors in determining whether there is a likelihood of confusion: (1) the strength of the mark; (2) the proximity of the goods; (3) the similarity of the marks; (4) evidence

of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by consumers; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines. *See Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011), *quoting AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). Despite the importance of the *Sleekcraft* factors to the likelihood of confusion analysis, "it is the totality of facts in a given case that is dispositive." *Pom Wonderful, LLC v. Hubbard*, 775 F.3d 1118, 1125 (9th Cir. 2014).

In its first order, the District Court opted to base its decision on only two of the *Sleekcraft* factors – the proximity of the goods and the similarity of the marks – as well as inventing a ninth factor, "the vast geographic distance between the businesses." (1-ER-31-35.) In its second order, the trial court additionally examined the likelihood of expansion, the marketing channels used, and the strength of Appellant's mark. (1-ER-10-16.) On both occasions, the lower court erred by not considering the other *Sleekcraft* factors, which, as set forth below, as all favor Appellant Foxy Lady, as well as the geographic distance between Appellant and Appellee.

### i. Geographic Distance does Not Favor FLC

The District Court incorporated its analysis of the geographic distance between Appellant's Foxy Lady gentlemen's club and Appellee's Foxy Lady shops into its analysis of the *Sleekcraft* factors. However, it made one error of law that must be discussed separately. Unlike common law trademark rights, which "extend only to the territory where a mark is known and recognized," a federal registration "presumptively entitles the [owner of the trademark] to **nationwide protection**." *Stone Creek*, 875 F.3d at 436 (emphasis added); *see also* 15 U.S.C. § 1057(b). Under the Lanham Act,

> registration and entry of a trademark on the Principal Register of the United States Patent and Trademark Office shifts the burden of proof from the plaintiff, who would have to establish his right to exclusive use in a common law infringement action, to the defendant, who must introduce sufficient evidence to rebut the presumption of plaintiff's right to such protected use.

*Vuitton Et Fils S.A. v. J. Young Enters.*, 644 F.2d 769, 775 (9th Cir. 1981); *see also Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 362 (2d Cir. 1959) (Congress has afforded "nationwide protection to registered marks, regardless of the areas in which the registrant actually uses the mark"). The burden of rebutting that presumption falls squarely

24

on the accused infringer. *See OTR Wheel Eng'g, Inc. v. West Worldwide Servs.*, 897 F.3d 1008, 1024-25 (9th Cir. 2018); *Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 269 (4th Cir. 2003), *quoting Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1529 (4th Cir. 1984).

FLC did not meet its burden of rebutting the presumption of exclusive nationwide use that Foxy Lady possesses because it didn't show up. That should have ended the inquiry in Appellant's favor but, inexplicably, the District Court decided on two separate occasions to ignore that FLC had declined to attempt to meet its burden and acted in the role of defense counsel, and despite getting the law wrong, ruled in favor of its own arguments.

The District Court committed legal error in advocating for FLC. Not only did the District Court fail to require Appellee to meet its burden, its attempt to "fill in the blanks" on Appellee's behalf backfired. All of the cases on which the District Court relied on this issue are distinguishable. The plaintiff in *Brookfield* obtained a registration for the mark "MovieBuff" years after the defendant had started using the term "Movie Buff" in its video stores. 174 F.3d at 1042-43. But even then, this Court found a likelihood of confusion existed and, significantly, did not factor

geographic disparity into its analysis. *Id*. at 1054, 1066-67.[2] *Fairway Foods v. Fairway Mkts.*, 227 F.2d 193, 197-98 (9th Cir. 1955), predates modern likelihood of confusion tests and the internet, and found that the plaintiff could not prevail on its trademark infringement claim because its mark was not even used in interstate commerce. Similarly, *Growler Station, Inc. v. Foundry Growler Station, LLC*, No. SA CV 18-0433-DOC (DFMx), 2018 U.S. Dist. LEXIS 225491, at *20-21 (C.D. Cal. July 19,

---

[2] The cases on which *Brookfield* relied on this point are also distinguishable. *Weiner King, Inc. v. Wiener King Corp.*, 615 F.2d 512, 515-16 (C.C.P.A. 1980), dealt with a senior unregistered user who did not even seek federal registration until an innocent junior user had obtained federal registrations for the same mark and began to aggressively expand. The holding in *Weiner King* has no application where, as here, the defendant did not start use until well after the plaintiff obtained federal registration. Indeed, *Weiner King* reiterates that, without the defenses of good faith or lack of knowledge (which Appellee never asserted), federal registration affords "a registrant nationwide protection for its registered marks, regardless of the geographic area in which the registrant actually uses his mark." *Id*. at 520.

*Brookfield* also relied on *Pinocchio's Pizza Inc. v. Sandra Inc.,* 11 U.S.P.Q.2d 1227, 1228 (T.T.A.B.1989), which similarly dealt with a plaintiff (an applicant for a mark who was denied registration because of the defendant's prior registration) who began using its PINOCCHIOS trademark for pizza years before the defendant obtained registered rights in its identical mark. Again, the legal principles on which *Pinocchio's Pizza* relied in finding that the geographic scope of registered rights was limited has no application here because Appellant had registered rights well before Appellee started using its confusingly similar marks.

2018), dealt with a descriptive, and thus weak, mark, and also mistakenly relied on the *Fairway* case.

But that is not where the District Court's mistakes end. As will be demonstrated below, its assumptions and misapplication of the law caused it to reach the wrong result, necessitating this appeal.

### ii. Appellant's Mark is Strong

Appellant's FOXY LADY mark is demonstrably strong, and it was properly pleaded as such. A trademark falls into one of five categories when gauging its strength:

- *Fanciful*: "a coined word or phrase, such as Kodak, invented solely to function as a trademark." *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1390-21 (9th Cir. 1993).

- *Arbitrary*: "common words arranged in an arbitrary way that is non-descriptive of any quality of the goods and services." *Id.* (*citing Stork Restaurant, Inc. v. Sahati*, 166 F.2d 348, 355 (9th. Cir. 1948)).

- *Suggestive*: the use of words that require "imagination to make a connection between the mark and an attribute of the product." *Goss*, 6 F.3d at 1391.

27

- *Descriptive*: the use of words that "define a particular characteristic of a product in a way that does not require any exercise of the imagination." *Survivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 632 (9th Cir. 2005).

- *Generic*: the common name of a product. *See Goss*, 6 F.3d at 1391.

Suggestive, arbitrary, and fanciful marks "are deemed inherently distinctive and are automatically entitled to protection because they naturally 'serve[] to identify a particular source of a product.'" *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005), *quoting Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 764, 768 (1992). A descriptive mark does not receive trademark protection unless it has acquired distinctiveness by establishing "secondary meaning" in the marketplace. *Filipino Yellow Pages, Inc. v. Asian Journal Publ'cns,* 198 F.3d 1143, 1147 (9th Cir. 1999). Generic marks are never protectable. *See Goss*, 6 F.3d at 1391.

The District Court erroneously determined that FOXY LADY was a "presumptively weak" "suggestive" mark, which "conveys an impression of Foxy Lady's business but requires the exercise of some

28

imagination and perception to reach a conclusion about its nature." (1-ER-15, *quoting Brookfield,* 174 F.3d at 1058 n. 19.) The District Court was wrong—imagination and perception are precisely what make it strong. The FOXY LADY mark is arbitrary. The term FOXY LADY does not inherently suggest bar or restaurant services or exotic dance performances. It could suggest Jimi Hendrix merchandise, a Michael J. Fox fandom, or fox (the animal) costumes. However, regardless of whether the mark is arbitrary or suggestive, it is inherently distinctive and entitled to protection.

Even if the FOXY LADY mark were "presumptively weak," it would still be entitled to the strongest possible protection. "[O]nce a mark has been registered for five years, the mark must be considered strong and worthy of full protection." *Wynn Oil Co. v. American Way Serv. Corp.*, 943 F.2d 595, 600 (6th Cir. 1991); *see also Brookfield*, 174 F.3d at 1046-47 n.10; *San Diego Comic Convention v. Dan Farr Prods.*, 336 F. Supp. 3d 1172, 1186 (S.D. Cal. 2018) ("Where a court is dealing with incontestable marks, these marks are 'presumed to be strong marks'") (quoting *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 794 (6th Cir. 2004)); 15 U.S.C. § 1115(b). The District Court had an erroneous view of the law

when holding that the mark was "presumptively weak," tainting its entire analysis.

The FOXY LADY mark has been used by Appellant and its direct predecessors-in-interest for over 45 years and has been registered with the USPTO for 20 years. It has been incontestable for nearly 15 years. It has been covered widely in national and international media. (2-ER-175-176, ¶¶ 14-17; 2-ER-190-211.) It has been consistently promoted by Appellant Foxy Lady during that entire time. (2-ER-174-175, ¶¶ 11-13; 2-ER-99-100, ¶¶ 11-12.) It is entitled to the maximum possible protection. *See Sleekcraft*, 599 F.2d at 349-50. This factor favors Appellant.

The District Court addressed this long period of use and nationwide incontestability by citing *Brennan's, Inc. v. Brennan's Rest, L.L.C.*, 360 F.3d 125 (2d Cir. 2004), for the proposition that acquired distinctiveness of a mark must be demonstrated within the relevant market. Attempting to compare *Brennan's* to the facts here is misguided, at best, because that case dealt with a common surname, which is about as conceptually weak as a mark can be. *Id.* at 131. Furthermore, and with respect to the Second Circuit, the decision in *Brennan's* is wrong to the extent it could be read to suggest that a nationwide reputation is necessary for a trademark

30

holder to enforce their rights nationwide. To find otherwise would defeat the purpose of obtaining a federal trademark registration.

Federal registration grants nationwide priority and notice to all would-be infringers precisely so that a party may not infringe on a registered mark in a geographic area where the registered user has not yet expanded. The *Brennan's* decision (at least as interpreted by the District Court) instead requires actual use of a mark nationwide for rights to be enforced nationwide, as a mark can only have an adequate reputation where its owner is actually doing business. This directly conflicts with the entire scheme of federal registration, and the Court should not endorse such a misguided view of trademark law. The alternative would mean that since there is no Macy's Department Store in Vermont, that one is free to open a Macy's there. And if there is a town without a Starbucks Coffee somewhere in Nebraska, one could simply plant their own Starbucks Coffee (or Starbucks Gentlemen's Club) in that town in Nebraska.

The in-circuit decisions the District Court cited on this point are, as discussed above, either inapposite because they dealt with completely

31

different factual scenarios or mistakenly relied on case law pre-dating modern likelihood of confusion tests. Thus, this factor favors Appellant.

### iii. The Goods and Services of FLC are Proximate to Those of Appellant

A reasonable consumer would think FLC's goods and services are related and proximate to Appellant's. Goods and services are related "when they are complimentary, sold to the same class of purchasers, or similar in use and function." *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1163 (9th Cir. 2021). "Related goods are more likely than unrelated goods to confuse the public as to the producers of the goods." *Brookfield*, 174 F.3d at 1055. Goods and services are proximate to each other when the public would reasonably think they come from the same source when sold under the same mark. *See Ironhawk*, 638 F.3d at 1163.

The mark owner and the alleged infringer do not need to be direct competitors to satisfy the proximity factor. *See Reardon*, 683 F.3d at 1212. Courts in this Circuit have "adopted a rather flexible approach to the whole notion of competition." *Id.* at 1213. For instance, this Court has held that two companies "are not properly characterized as non-competitors" when they both "offer products and services relating to the

32

entertainment industry generally, and their principal lines of business relate to movies specifically." *Brookfield*, 683 F.3d at 1056.

Here, Appellant and Appellee offer competitive services, and the goods and services provided by Foxy Lady and FLC are more than related. They are virtually identical. Foxy Lady has its FOXY LADY mark registered for bar and restaurant services; FLC uses FOXY LADY in conjunction with bar and restaurant services. Both Foxy Lady and FLC use scantily clad women to provide those services to customers. In the eyes of the consumer, there is virtually no difference between the goods and services offered by Appellant and Appellee.

The District Court relied upon one case to determine that this factor weighed against Appellant. (1-ER-37.) However, it misinterpreted the facts and the law that the case relied upon, leading the court to an inexplicable conclusion. In *BBC Group NV LLC v. Island Life Restaurant Group LLC*, 413 F.Supp.3d 1032 (W.D. Wash. 2019), Island Life Restaurant Group LLC ("Island Life") opened a small chicken restaurant chain in Washington state in 2016 called BOK A BOK and obtained a USPTO registration in 2017. *See id.* at 1039. In 2018, it received job

applications for a chicken restaurant in Nevada operated by BBC Group NV LLC ("BBC") that was to be called BOK BOK. *See id.*

After learning of BBC's anticipated BOK BOK restaurant, Island Life sent a cease and desist letter, asking BBC to stop using the BOK BOK mark. *See id.* BBC declined to do so and instead purchased a mark registration from a New York restaurant called BOCBOC CHICKEN DELICIOUS. *See id.* at 1039-40. BBC then sued Island Life for trademark infringement, unfair competition, and cancellation of the BOK A BOK mark, among other claims. *See id.* at 1040. Island Life sought summary judgment. *See id.*

The court granted Island Life's summary judgment motion, holding that BBC did not acquire the rights to BOCBOC CHICKEN DELICIOUS through assignment and was therefore the junior user. *See id.* at 1041. The court also declined to cancel Island Life's BOK A BOK mark because it was not even clear to it whether BBC had standing to demand that it be cancelled. *See id.*

In its analysis of the *BBC* case, the District Court improperly focused on the geographic distance between the New York restaurant and the Washington restaurant. It failed to note that the claims in *BBC* were

asserted by a junior user that had attempted, but failed, to acquire superior rights by purchasing a facially similar mark registration. (1-ER-37; 1-ER-11.) The *BBC* court ultimately denied BBC's claims "[b]ecause the Court finds the assignment of 'BOCBOC Chicken Delicious' to BBC [is] invalid as a matter of law." 413 F.Supp.3d at 1042. This upends the District Court's entire analysis. In this case, Appellant Foxy Lady unquestionably possesses senior rights to FLC, and the goods and services the parties offer are almost identical. This factor strongly favors Appellant, and the lower court's misreading of the entire foundation of its finding otherwise constitutes reversible error.

### iv.   FLC's Mark is Similar to Appellant's

The similarity of FLC's mark to Appellant's FOXY LADY mark favors Appellant. In assessing the similarity of marks, courts evaluate their "sight, sound, and meaning." *Brookfield*, 174 F.3d at 1054. The marks are assessed "in their entirety and as they appear in the marketplace." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000). When making this assessment, "similarities [are] weighed more heavily than differences." *Brookfield*, 174 F.3d at 1054. In

both of its orders at issue in this appeal, the District Court improperly weighed minor differences far more heavily than similarities.

Foxy Lady possesses an incontestable trademark registration for FOXY LADY. FLC uses the marks FOXY LADY CAFÉ and FOXY LADY LATTE. The addition of generic terms, such as "café" or "latte," to a mark is of no consequence to the likelihood of confusion analysis and does not lessen the likelihood of consumer confusion. *See Electropix Inc. v. Liberty Livewire Corp.*, 178 F.Supp.2d 1125, 1132 (C.D. Cal. 2001), *quoting* 2 J. Thomas McCarthy, *McCarthy on Trademarks* § 23:50 (4th ed. 2000).

To be clear, these are the marks we're talking about, as they appear to consumers (1-ER-33):





Appellant's FOXY LADY mark

Appellee's FOXY LADY LATTE mark

36

Despite these obvious similarities, the District Court noted the use of the word "latte" in FLC's mark and logo in its analysis and that FLC "emphasizes a service and product that [Foxy Lady] does not." (1-ER-33-34; 1-ER-10.) In doing so, it relied on legally insignificant differences far more than similarities. While it mentioned that both Foxy Lady's and FLC's logos featured "comparable silhouettes," it ignored that glaring similarity in favor of FLC using a different font for its logo and a different background color. (1-ER-33.) The minor differences identified by the lower court are irrelevant to the similarity analysis. One does not avoid confusion with the MCDONALD'S trademark by using the mark MCDONALD'S FRAPPUCCINO, even if McDonald's does not sell menu items it calls Frappuccinos.

Another irrelevant feature the District Court focused on is the "providence" wording at the bottom of Appellant's mark, despite the term "providence" not being part of Appellant's federal registration. This was important to the District Court because geographic indicators in a mark can be relevant to determining similarity of meaning. (1-ER-34 (citing *Peninsula Cmty. Health Servs. v. Olympic Peninsula Health Servs. PS*, 3:20-cv-05999-BHS, at *26-27 (W.D. Wash. Mar. 17, 2023).) The District

37

Court's reliance on *Olympic Peninsula* was misguided, however. That case dealt with two different marks for similar services, both of which contained a geographic descriptor (Kitsap Peninsula vs. Olympic Peninsula) in the mark, and both of which were part of a program designed to offer medication-assisted treatment to different geographic areas. *Id*. at *2, 4, 26-27. The plaintiff also conceded that its word mark was descriptive (*id*. at *4), and the court found that both marks at issue were "remarkably weak." *Id*. at *7-8. That is a far cry from the facts here, where Appellant's mark is inherently distinctive, and a geographic descriptor is not even part of its mark.

The District Court also found that, while FOXY LADY and FOXY LADY LATTE and CAFÉ are legally identical, the "use of identical dominant words does not automatically mean that two marks are similar." (1-ER-32, *quoting Luigino's, Inc. v. Stouffer Corp.*, 170 F.3d 827, 830 (8th Cir. 1999).) However, once again, the District Court misapplied the cases it cited.

In the *Luigino's* case, Stouffer's owned the LEAN CUISINE mark for use in low fat frozen dinners, while Michelina's, a competitor, introduced similar products using the mark MICHELINA'S LEAN 'N

38

TASTY. *See id.* at 828-29. Stouffer's threatened to sue Michelina's, and Michelina's filed an action for declaratory relief. *See id.* at 829. In response to Stouffer's argument that the marks were confusingly similar because they both mean "dietary but tasty," the court held that "[w]ith the exception of the word 'lean,' which is generally descriptive of food and not registrable as a trademark, the two marks look and sound different." *Luigino's*, 170 F.3d at 830.

In the *Stouffer's* case, the court reached the correct decision. With the exception of the word "lean," LEAN CUISINE and MICHELINA'S LEAN 'N TASTY are wholly different from one another. In this case, the District Court got it wrong. FOXY LADY and FOXY LADY LATTE and CAFÉ are legally identical with logos that feature the same dominant features – the FOXY LADY name and the silhouette of a woman. And, unlike in *Stouffer's*, FLC uses the entirety of Appellant's mark.

The District Court also cited *Electropix*. In that case, the marks in question were LIVE WIRE and LIBERTY LIVEWIRE. *See* 178 F.Supp.2d at 1131. There, the court held that the alleged infringer's use of LIBERTY LIVEWIRE was not infringing because "the term 'Livewire'" is no more salient "than the term 'Liberty.'" *See id.* However, the court also held that

39

"confusion is likely if Defendants advertise or otherwise engage in business solely as 'Livewire.'" *Id.* at 1132. This makes sense because "Live Wire" and "Livewire" are legally identical, just as "Foxy Lady" and "Foxy Lady Latte" or "Foxy Lady Café" are legally identical. If the *Electropix* infringer began using LIVEWIRE LATTE, the outcome would likely have been different—adding "latte" or "café" merely capitalizes on the antecedent.

The term "Foxy Lady" in both Foxy Lady's mark and FLC's infringing mark is far more salient than the terms "latte" and "café," which are legally irrelevant to the District Court's similarity analysis.[3] The District Court's misapplied trademark law in drawing its conclusion that the marks were not similar enough to weigh in Appellant's favor. They are legally identical, and this factor weighs in Appellant's favor.

### v. Evidence of Actual Confusion is Unnecessary

Actual confusion "is not necessary to a finding of likelihood of confusion under the Lanham Act." *Network Automation, Inc. v. Advanced*

---

[3] If anything, the addition of these generic terms makes consumer confusion more likely, as consumers would likely believe that Appellee's marks signaled an expansion of Foxy Lady's services. Foxy Lady would have enjoyed the opportunity to prove such confusion through discovery, but it was deprived of that opportunity through Appellee's default.

*Sys. Concepts*, 638 F.3d 1137, 1151 (9th Cir. 2011), *quoting Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1456 (9th Cir. 1991). "Proving actual confusion is difficult … and the courts have often discounted such evidence because it was unclear or insubstantial." *Sleekcraft*, 599 F.2d at 352.

Appellee FLC defaulted three times, depriving Foxy Lady of the ability to take discovery and of demonstrating actual confusion. This should not be held against Foxy Lady, who would have preferred litigating this case on the merits to seeking default judgment. This factor is either neutral or favors Foxy Lady since FLC's refusal to participate handicapped Foxy Lady's ability to uncover evidence of actual confusion. To hold otherwise would require a plaintiff to load up an initial complaint with evidence beyond that required by Fed. R. Civ. P. 8, evidence that is frequently discounted and unnecessary. It would also impose unnecessary delays in a mark holder's ability to obtain injunctive relief. Thus, default judgment should not require evidence of actual confusion.

### vi. The Parties Use Convergent Marketing Channels

Convergent marketing channels, such as those used here, increase the likelihood of consumer confusion. *See Pom Wonderful LLC*, 775 F.3d

at 1130, *citing Sleekcraft*, 599 F.2d at 353. In assessing marketing channel convergence, "courts consider whether the parties' customer bases overlap and how the parties advertise and market their products." *Id.* (citing *Nutri/System, Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 606 (9th Cir. 1987)). "Marketing channels can converge even when different submarkets are involved so long as 'the general class of … purchasers exposed to the products overlap.'" *Id.* (quoting *Sleekcraft*, 599 F.2d at 353 (finding convergence where companies in diverse localities used the same sales methods and priced their products similarly)).

In the *Pom Wonderful* case, the court found the marketing channels converged even though the parties sold their wares in largely different states and retail chains. *See id.* The court found this to be insignificant. More importantly to the court, the products that the parties sold were similar and appealed to the same general class of consumer. *See id.* The facts of this case are similar to those in *Pom Wonderful*. The parties sell largely identical products, specifically food and beverage products. Both Appellant and Appellee sell alcoholic beverages and coffee to patrons, and both Appellant and Appellee use servers in provocative clothing to make those sales. Appellant's and Appellee's services apply to

42

the same class of consumers. However, the District Court inexplicably found that these were different "consumer bases" because one company was located in Rhode Island and the other in Washington. If consumer groups or market sectors are defined by geography rather than goods or services purchased, then federal trademark registration would cease to have any value because a remote infringer would never be found to use the same marketing channels as the mark owner. And, the District Court erroneously disregarded modern transcontinental transportation; citizens of New England do, in fact, travel to the Pacific Northwest. They would receive FLC's marketing through the same types of channels they receive Appellant's. Thus, this factor favors Appellant.

### vii. Average Consumers Exercise a Low Degree of Care for these Goods and Services

Deciding to patronize a business featuring scantily clad women does not require the average consumer to engage in research, unlike buying a car. Low customer care increases the likelihood of confusion. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1152 (9th Cir. 2011). In assessing the likelihood of confusion to the public, courts look to "the typical buyer exercising ordinary caution. When the buyer has expertise in the field, a higher standard is proper. ... Similarly,

43

when the goods are expensive, the buyer can be expected to exercise greater care in his purchases." *Id.* Moreover, "when the products themselves are very similar, and the marks are as well, sophistication of the typical buyer alone cannot be relied on to prevent confusion." *Monster, Inc. v. Dolby Labs Licensing Corp.*, 920 F. Supp. 2d 1066, 1074 (N.D. Cal. 2013), *citing McGregor-Doniger Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1137-38 (2d Cir. 1979).

Both Appellant and Appellee are targeting the average consumer that wants a bite to eat and a drink while being served by women in provocative clothing. They are both marketing to average consumers, not experts. Consumers do not exercise a high degree of care when purchasing the goods and services of Appellant or Appellee, and this factor favors Foxy Lady.

### viii. FLC Should be Presumed to have Intended to Select an Infringing Mark

Appellee FLC elected to ignore this litigation, despite being served with process three times, making it impossible for Appellant Foxy Lady to take discovery regarding Appellee's intent in selecting its mark. However, a trademark registration provides "constructive notice of the registrant's claim of ownership thereof." 15 U.S.C. § 1072. Given

44

Appellee's failure to participate and the constructive notice provided by Foxy Lady's trademark registration, this Court should presume, in light of the constructive notice, that Appellee intentionally selected the mark in bad faith and with intent to infringe.

While this issue has yet to be explored by this Court, several District Courts within the Ninth Circuit "have reasoned that such constructive notice supports a finding of intent under the *Sleekcraft* factors." *See Sarieddine v. Vaptio, Inc.*, No. 2:20-cv-07785-VAP-MRWx, 2021 U.S. Dist. LEXIS 198590, at *20-21 (C.D. Cal. June 15, 2021), *citing Color Me House, Inc. v. Discovery Communs., Inc.*, No. C12-5935 RJB, 2013 U.S. Dist. LEXIS 44234, at *21 (W.D. Wash. Mar. 27, 2013); *Coach Servs., Inc. v. Cielo Creations, Inc.*, No. CV 10-4108 GAF (EX), 2011 U.S. Dist. LEXIS 165185, at *9 (C.D. Cal. Aug. 16, 2011); *Discovery Communs., Inc. v. Animal Planet, Inc.*, 172 F. Supp. 2d 1282, 1290 (C.D. Cal. Sep. 17, 2001). Considering that Appellant's mark is registered and incontestable, Appellee had constructive notice of Appellant's FOXY LADY mark, and Appellee refused to appear and defend itself, the Court should infer that Appellee had the bad faith intent to infringe. This factor favors Appellant.

### ix. Appellant is Likely to Expand

Appellant's likely expansion favors default judgment. The owner of a trademark is "afforded greater protection against competing goods." *Sleekcraft*, 599 F.2d at 354. When there is a likelihood "that either party may expand [its] business to compete with the other will weigh in favor of finding that the present use is infringing." *Id.* However, a finding of likelihood of expansion by either side "is not required for a finding of likelihood of confusion." *Pom Wonderful*, 775 F.3d at 1132 (9th Cir. 2014).

Here, this factor is not required to find a likelihood of confusion. However, it should favor Appellant or remain neutral. In the District Court, Foxy Lady asserted that it had plans to expand but did not provide specific details to the court. As noted above, Appellant has licensed its mark to other parties in the United States in the past and intends to continue doing so. (2-ER-99, ¶ 11.) The presence of infringing users clearly hampers that ability and lessens the value of its marks. *See Trader Joe's v. Hallatt*, 835 F.3d 960, 970 (9th Cir. 2016); *see also Lawn Managers, Inc. v. Progressive Lawn Managers, Inc.*, 959 F.3d 903, 914 (8th Cir. 2020), quoting *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 506 (7th Cir. 1992). At worst, the District Court should have found that this

46

factor was neutral. However, in its analysis, it found that Foxy Lady's lack of more specific language actually *favored* FLC. (1-ER-12.) In other words, the District Court excused FLC's default and failure to meet its burdens, and it penalized Appellant for merely complying with Rule 8's pleading requirements.

Once again, FLC's failure to participate deprived Foxy Lady of discovery. Foxy Lady should not be punished for FLC's absence, and this factor should weigh in its favor.

## C. The remaining Eitel factors weigh strongly in favor of default judgment

The District Court chose to examine only two *Eitel* factors and disregard the rest. However, all of the *Eitel* factors favor Appellant Foxy Lady. An analysis of all of them warrants default judgment.

### i. Appellant is Prejudiced in the Absence of Default Judgment

*Eitel* asks whether the moving party would be prejudiced if default judgment is not entered. *See Eitel*, 782 F.2d at 1471. Prejudice is established if failure to enter default judgment "would leave [Appellant] without a proper remedy." *G&G Closed Circuit Events, LLC v. La Placita RM Rest., Inc.*, No. 2:22-cv-1089 DB, 2023 U.S. Dist. LEXIS 137940, at

\*4 (E.D. Cal. Aug. 7, 2023), citing *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002). Here, allowing FLC to escape liability while ignoring the judicial process would prejudice Appellant Foxy Lady. *See UN4 Prods., Inc. v. Primzoich*, 372 F.Supp.3d 1128, 1133 (W.D. Wash. 2019). Given that FLC refused to appear in this action, "denial of default judgment would leave [Foxy Lady] no remedy for this injury." *G&G*, 2023 U.S. Dist. LEXIS 137940 at \*4. This factor weighs in Foxy Lady's favor. *See id.*

### ii. The Sum of Money at Stake Favors Appellant

Appellant did not seek an exorbitant judgment. "Default Judgment is disfavored where the amount of money is too large or unreasonable in relation to defendant's conduct." *Vogel v. Rite Aid Corp.*, 992 F.Supp.2d 998, 1012 (C.D. Cal. 2014); see also *NewGen, LLC v. SafeCig, LLC*, 840 F.3d 606, 617 (9th Cir. 2016). In trademark infringement cases, the plaintiff is entitled to "damages that will compensate and serve as a deterrent," which is precisely what Foxy Lady seeks. *O'Connor v. 206-LLC*, 2:23-cv-00954-RSM, 2023 U.S. Dist. LEXIS 210482, at \*9 (W.D. Wash. Nov. 27, 2023).

In this case, Foxy Lady sought far less than it was entitled to seek. It engaged a public accounting expert who, using publicly available information, along with reliable industry statistics, opined that FLC's locations generated approximately $19.4 million in revenue and $11.3 million in gross profits from January 9, 2019, through May 31, 2023. (*See* 2-ER-150; 2-ER-70-97.) Given that a defendant's profits may be used as a measure of damages, the District Court could have awarded up to $11.3 million in damages. *See Choice Hotels Int'l, Inc. v. Kumar & Birla, LLC*, No. CV-11-5100-LRS, 2013 U.S. Dist. LEXIS 192618, at *4 (E.D. Wash. Jan. 14, 2013). Foxy Lady requested a very reasonable total of 5% of FLC's profits. (2-ER-150-152.) This factor favors Appellant.

### iii.    There are No Disputed Material Facts

A dispute regarding material facts may caution against default judgment, but such is absent here. *See Eitel*, 782 F.2d at 1471-72. As discussed in Section III of this brief, Appellant Foxy Lady filed a well-pleaded complaint with meritorious claims. Appellee FLC did not show up despite being served three times.

Given that FLC failed to appear, and in the absence of any evidence contradicting Appellant's assertions, there is no possibility for a dispute

regarding a material fact. *See G&G*, 2023 U.S. Dist. LEXIS 137940, at *7-8), citing *Elektra Entm't Grp., Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005). This factor favors Appellant.

### iv.   FLC Lack's Excusable Neglect

FLC's default is inexcusable. An unresponsive defendant's conduct may be culpable or due to excusable neglect. *See Las Vegas Sands Corp. v. Unknown Registrants*, No. 2:15-cv-02341-APG-NJK, 2016 U.S. Dist. LEXIS 60117, at *21 (D. Nev. May 3, 2016), citing *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987). Appellee was served three times and failed to appear. It has not "demonstrated a clear purpose to defend the suit." *Civic Ctr. Square v. Ford*, 12 F.3d 875, 879 (9th Cir. 1993). In fact, it has clearly informed this Court that it has no intention of defending itself by refusing three separate times to respond to Appellant's Complaints. Appellee's failure to respond cannot be excusable neglect, and this factor favors Appellant.

### v. The Merits Should be Resolved in Appellant's Favor

Cases should be decided on their merits, but default judgment is appropriate where the plaintiff has no opportunity to try its case because the defendant has "failed to respond or otherwise defend." *Nike, Inc. v. Fuijan Jialaimeng Shoes Co.*, No. 2:17-cv-00516-GMN-GWF, 2019 U.S. Dist. LEXIS 55583, at *10 (D. Nev. Mar. 6, 2019). Here, FLC was repeatedly served and made no effort to respond. Again, this factor favors Appellee.

## CONCLUSION

For the foregoing reasons, this Court should reverse the District Court's orders denying Appellant's motions for default judgment and remand for entry of judgment by default in Appellant's favor.

Dated: October 25, 2024.     RANDAZZA LEGAL GROUP, PLLC

/s/ Marc J. Randazza
Marc J. Randazza
Ronald D. Green
Jay M. Wolman
Randazza Legal Group, PLLC
4974 S. Rainbow Blvd., Ste 100
Las Vegas, Nevada 89118
Tel:  702-420-2001
ecf@randazza.com

Alex J. Shepard
Randazza Legal Group, PLLC
720 Seneca St., Ste. 107
Seattle, WA 98101
Tel:  564-236-2220
ecf@randazza.com

*Attorneys for Appellant*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** | 24-5629

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

Appellant's Opening Brief

**Signature** | s/ Ronald D. Green          **Date** | 10/25/2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*